UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ROBERT T. BROWN,

       Plaintiff,

    v.

COUNTY OF SAN JOAQUIN, SHERIFF
BAXTER DUNN, DEPUTY RICHARD
DUNSLING, DEPUTY SEMILLO,
DEPUTY MENDEZ, LT. MENDOZA,
DOES I through X, inclusive,

       Defendants.

NO. CIV. S-04-2008 FCD PAN

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on the County of San
Joaquin's ("County"), Sheriff Baxter Dunn's ("Dunn"), Deputy
Richard Dunsing's ("Dunsing"), Deputy Semillo's ("Semillo"),
Deputy Mendez's ("Mendez"), and Lt. Mendoza's ("Mendoza") motion
for summary judgment or, in the alternative, summary adjudication
of the issues.  Plaintiff Richard T. Brown ("Brown") opposes the
motion.  On April 21, 2006, the court heard oral argument on the

matter.  For the reasons set forth below, defendants' motion is GRANTED in part and DENIED in part.

BACKGROUND[1]

In the fall of 2003, the administration of the Stanislaus River Parks ("the administration") was experiencing problems with men hanging around the restrooms and trails of the McHenry Avenue Recreation Area ("McHenry Avenue Park") for the purposes of engaging in or soliciting sexual behavior in areas of the park reasonably accessible to the public. (UF ¶ 1).  The Stanislaus River Parks are operated by the United States Army Corps of Engineers.  (Id.)  However, during the relevant time period, the U.S. Army Corps did not provide law enforcement services to the McHenry Avenue Park, but had a contract with the County of San Joaquin's Sheriff's Department whereby the Corps paid the Sheriff's Department for performing normal law enforcement patrol and any requested special operations.  (UF ¶ 3).

Employees at the McHenry Avenue Park received complaints from park staff, members of the public, visitors to the park, and volunteer park hosts of public displays of sexual activity between men at or near the restroom in the park.  (Decl. of Norman Winchester in Supp. of Mot. for Summ. J. ("Winchester Decl."), attached as Ex. 2 to Decl. of Daniel C. Cederborg in Supp. of Mot. for Summ. J. ("Cederborg Decl."), filed Mar. 21, 2006, ¶ 4; Decl. of James Hill in Supp. of Mot. for Summ. J. ("Hill Decl."), attached as Ex. 3 to Cederborg Decl., ¶ 3).  One

---

[1]     Unless otherwise noted, the facts herein are undisputed.  (See Pl.'s Opp'n to Def.'s Stmt. of Undisp. Facts ("UF"), filed Apr. 10, 2006).

park employee personally observed men engaged in sexual activity with each other in areas of the park accessible to the public. (Hill Decl. ¶ 4).  In September 2003, the administration requested that the Sheriff's Department increase its presence in the McHenry Avenue park to reduce the incidence of sexual activity in public places and further requested an undercover operation to discourage men from engaging in lewd or sexual activity in public in the park.  (Winchester Decl. ¶ 6). Defendant Dunsing was assigned to organize the undercover operation.  (UF ¶ 5).  Defendants Dunsing, Semillo, and Mendex were conducting an undercover operation at the McHenry Avenue Park on October 8, 2003.  (UF ¶ 6).

On October 8, 2003 at approximately 2:00 p.m., plaintiff drove to the McHenry Avenue Park and parked near one of the restroom facilities.  (UF ¶ 7).  Plaintiff got out of his vehicle, but did not immediately walk into the restroom. Plaintiff contends that he was smoking a cigarette, and because a sign on the restroom door read "no smoking," he finished his cigarette before entering the restroom.  (Dep. of Robert T. Brown, Jr. ("Brown Dep."), attached as Ex. 1 to Cederborg Decl., 76:7-77:7).

Plaintiff entered the restroom, followed shortly thereafter by defendant Dunsing, dressed in plain clothes.  (UF ¶ 10). Dunsing observed plaintiff standing at the urinal with his penis in his hand.  (Id.)  Dunsing spent several minutes in the restroom, walked back and forth behind plaintiff twice, and left and reentered the restroom at least once.  (UF ¶ 11).  During the entire time Dunsing was in the restroom, he saw plaintiff

standing at the urinal with his penis in his hand.  (UF ¶ 12).
At no time, did plaintiff urinate while in the restroom.  (Brown
Dep. 103:12-15).  Defendant Dunsing contends that he believed
plaintiff was masturbating.  (Decl. of Richard Dunsing in Supp.
of Mot. for Summ. J. ("Dunsing Decl."), attached as Ex. 5 to
Cederborg Decl., ¶¶ 7-10).  Plaintiff contends that he was not
masturbating, but that he could not urinate because he was
uncomfortable.  (Brown Dep. 92:4-7; 103:15-17).  When plaintiff
exited the restroom, he was arrested by defendant Dunsin without
incident on charges of lewd conduct and indecent exposure.  (UF ¶
14).

On September 27, 2004, plaintiff filed this action, seeking
declaratory and injunctive relief and damages pursuant to 42
U.S.C. §§ 1983, 1985, and 1988, 18 U.S.C. § 1961 et seq., the
First, Fourth, and Fourteenth Amendments to the United States
Constitution, the corresponding provisions of the California
Constitution, California Civil Codes §§ 51, 51.5, 52, 52.1, and
common law.  The parties have stipulated to the dismissal of the
following claims with prejudice: (1) all class action
allegations; (2) all claims asserted against Sheriff Baxter Dunn,
Sheriff's Deputy Mendex, and Sheriff's Deputy Semillo; (3)
plaintiff's § 1983 claim based upon First Amendment Free Speech
against all defendants; (4) plaintiff's claims for conspiracy
under federal civil rights statutes against all defendants; and
(5) plaintiff's claims for violations of Unruh and Tome Bane
Civil Rights Act against all defendants.  (Stipulation and Order
Dismissing Certain Claims and Parties, filed May 3, 2006).  On
March 21, 2006, defendants filed a motion for summary judgment,

or in the alternative, summary adjudication, of the remaining claims.

**STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u> at 324. Indeed, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Id.</u> at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a

1   genuine issue as to any material fact actually does exist.

2   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

3   585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

4   253, 288-289 (1968).  In attempting to establish the existence of

5   this factual dispute, the opposing party may not rely upon the

6   denials of its pleadings, but is required to tender evidence of

7   specific facts in the form of affidavits, and/or admissible

8   discovery material, in support of its contention that the dispute

9   exists.  Fed. R. Civ. P. 56(e).  The opposing party must

10  demonstrate that the fact in contention is material, i.e., a fact

11  that might affect the outcome of the suit under the governing

12  law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986),

13  and that the dispute is genuine, i.e., the evidence is such that

14  a reasonable jury could return a verdict for the nonmoving party,

15  Id. at 251-52.

16      In the endeavor to establish the existence of a factual

17  dispute, the opposing party need not establish a material issue

18  of fact conclusively in its favor.  It is sufficient that "the

19  claimed factual dispute be shown to require a jury or judge to

20  resolve the parties' differing versions of the truth at trial."

21  First Nat'l Bank, 391 U.S. at 289.  Thus, the "purpose of summary

22  judgment is to 'pierce the pleadings and to assess the proof in

23  order to see whether there is a genuine need for trial.'"

24  Matsushita, 475 U.S. at 587 (quoting Rule 56(e) advisory

25  committee's note on 1963 amendments).

26      In resolving the summary judgment motion, the court examines

27  the pleadings, depositions, answers to interrogatories, and

28  admissions on file, together with the affidavits, if any.  Rule

56(c); SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87, 106 S. Ct. at 1356.

**ANALYSIS**

**A.   Section 1983 Claims**

Plaintiff brings claims against defendants pursuant to 42 U.S.C. § 1983.  Plaintiff asserts that the defendants Dunsing and Mendoza acted under color of law to deprive him of his Fourth Amendment constitutionally protected right to be free from unreasonable search and seizure.  Plaintiff also asserts that defendants Dunsing and Mendoza deprived him of his rights to Equal Protection under the law by using decoys to target male/male public sex, and not male/female or female/female public sex.  Plaintiff also asserts that the County is liable for maintaining a policy, practice, or custom that violated his civil rights.  Defendants move for summary judgment on the ground that

7

the claims fail as a matter of law and that the defendant
officers are entitled to qualified immunity.

### 1. Unreasonable Search and Seizure

Plaintiff asserts that defendants Dunsing and Mendoza
violated his Fourth Amendment rights because they did not have
probable cause to arrest him.  Defendants contend that there was
probable cause to arrest plaintiff.

Plaintiff was arrested for engaging in lewd or dissolute
conduct in a public place in violation of California Penal Code §
647(a) and indecent exposure in violation of California Penal
Code § 314(1).  Plaintiff asserts that defendants Dunsing and
Mendoza did not have probable cause to arrest him.  "Probable
cause exists when, under the totality of the circumstances known
to the arresting officers (or within the knowledge of the other
officers at the scene), a prudent person would believe the
suspect had committed a crime."  Dubner v. City and County of San
Francisco, 266 F.3d 959, 966 (9th Cir. 2001) (citing United
States v. Garza, 980 F.2d 546, 550 (9th Cir. 1992).  "In
evaluating a custodial arrest executed by state officials,
federal courts must determine the reasonableness of the arrest in
reference to state law governing the arrest."  Pierce v.
Multnomah County, 76 F.3d 1032, 1938 (9th Cir. 1996) (internal
quotations omitted).  California law requires that the court look
to the totality of the circumstances known by the officer to
decide whether the officer's determination of probable cause was
reasonable.  See People v. Guajardo, 23 Cal. App. 4th 1738
(1994); Agar v. Superior Court, 21 Cal. App. 3d 24, 29 (1971).
/////

### a.   California Penal Code § 647(a)

California Penal Code § 647(a) provides that it is a misdemeanor to "solicit[] anyone to engage in or [to] engage[] in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view." Cal. Penal Code § 647(a) (West 2006). The California Supreme Court has examined this section under a challenge of its validity on the grounds of vagueness. <u>Pryor v. Municipal Court</u>, 25 Cal. 3d 238 (1979). The court found that the section as construed by prior decisions rendered the section unconstitutionally vague, creating "the danger that police, prosecutors, judges, and juries will lack sufficient standards to reach their decisions, [and] opening the door to arbitrary or discriminatory enforcement of the law." <u>Id.</u> at 252. The court found that the danger of discriminatory enforcement was particularly important in that case because of studies revealing that the overwhelming majority of 647(a) arrests in the area involved male homosexuals. <u>Id.</u> For the same reasons, the concern with the danger of discriminatory enforcement is present in this case as well. However, in order to uphold the statute, the California Supreme Court adopted a limited and specific construction consistent with the function of § 647(a). <u>Id.</u> at 244. As such, the court held that the section prohibits

> only the solicitation or commission of conduct in a public place or one open to the public or exposed to public view, which involved that touching of the genitals, buttocks, or female breast, for purposes of sexual arousal, gratification, annoyance or offense, by a person who knows or should know of the presence of persons who may be offended by the conduct.

1 <u>Id.</u>  Therefore, subsection (a) prohibits only the solicitation or
2 commission of sexual touching done with specific intent *when*
3 *persons may be offended by the act.*  <u>Id.</u> at 257; <u>see also</u> <u>People</u>
4 <u>v. Superior Court (Caswell)</u>, 46 Cal. 3d 381 (1988) (holding that
5 "[a] person is subject to arrest under [§ 647(d)] only if his or
6 her conduct gives rise to probable cause to believe that he or
7 she is loitering in or about a public restroom with the
8 proscribed illicit intent").  "[T]he state has little interest in
9 prohibiting that conduct if there are no persons present who may
10 be offended."  <u>Id.</u> at 256.  The requirement that an individual
11 knows or should know of the presence of a person who may be
12 offended has two parts: (1) a factual question whether the
13 individual knew or should have known of the other person's
14 presence; and (2) a factual question whether the individual knew
15 or should have known that the observer may be offended by such
16 conduct.  <u>People v. Rylaarsdam</u>, 130 Cal. App. 3d Supp. 1, 9
17 (1983).  The focus of the inquiry is the state of mind of the
18 individual.  <u>Id.</u>

19     Defendants present evidence that the McHenry Avenue Park,
20 including the restroom used by plaintiff, was known as a public
21 meeting place for men wishing to engage in sexual activity.
22 (Winchester Decl. ¶ 5; Hill Decl. ¶ 4).  Defendants also present
23 evidence that, based upon his observation of plaintiff standing
24 outside the restroom as well as his observation of plaintiff's
25 mannerisms in the urinal, defendant Dunsing believed that
26 plaintiff was masturbating.  (Dunsing Decl. ¶ 7).  Irrespective
27 of whether plaintiff was or was not masturbating, this evidence
28 may be sufficient to give rise to probable cause that plaintiff

engaged in an act of sexual arousal for the purposes of sexual
arousal or gratification.[2]

Defendants however do not present evidence that establish
that they had probable cause to believe that plaintiff knew or
should have known that any alleged masturbation would have been
offensive to defendant Dunsing.  See Caswell 46 Cal. 3d at 395-96
(listing several examples of circumstances giving rise to
probable cause of intent in § 647(d), a similarly phrased
statute).  The undisputed evidence reveals that defendant Dunsing
spent *several minutes in the restroom*, walked back and forth
behind plaintiff twice, and left and reentered the restroom at
least once.  (UF ¶ 11).  Plaintiff provides evidence that he saw
defendant Dunsing staring at him.  (Brown Dep. 77:15-17).
Plaintiff also testified that Dunsing twice asked him if he was
okay while standing at the urinal.  (Brown Dep. 77:18-25).  This
evidence creates a factual issue of whether there was probable
cause to believe that plaintiff knew or should have known that
any alleged masturbation would be offensive to Dunsing.  Given
the lack of determinative evidence proffered by defendants, as
well as plaintiff's evidence regarding the circumstances of the
incident, there is certainly a triable issue of fact regarding
whether defendants had probable cause to believe that plaintiff
knew or should have known that any masturbatory conduct would be
offensive to defendant Dunsing.

---

[2]    Defendants also present undisputed evidence that
plaintiff knew of defendant Dunsing's presence in the restroom.
(UF ¶¶ 10-12).

11

1               **b.   California Penal Code § 314(1)**

2      California Penal Code § 314(1) provides that "every person

3 who willfully and lewdly . . . exposes his person, or the private

4 parts thereof, in any public place, or in any place where there

5 are present other persons to be offended or annoyed thereby . . .

6 is guilty of a misdemeanor."   Cal. Pen. Code § 314(1) (West

7 2006).   The requirement of lewd intent in § 314 means that the

8 conduct must be sexually motivated.   In re Smith, 7 Cal. 3d 362,

9 366 (1972); In re Dallas, 85 Cal. App. 4th 937 (2001).   As such,

10 the individual must not have intended only to expose himself, but

11 also "to direct public attention to his genitals for the purposes

12 of sexual arousal, gratification, or affront."   Id.

13      Again, defendants present evidence that Dunsing believed

14 that he observed plaintiff masturbating in the urinal.   (Dunsing

15 Decl. ¶ 7).   Plaintiff presents evidence that he was not

16 masturbating in the urinal, but that he simply could not urinate

17 because he was made uncomfortable, presumably by Dunsing's

18 lingering presence and conduct.   (Brown Dep. 92:4-7; 103:15-17).

19 Based upon this conflicting evidence, there is a triable issue of

20 fact regarding whether Dunsing's belief that plaintiff was

21 masturbating was reasonable in the totality of the circumstances.

22 Further, for the reasons discussed in relation to the probable

23 cause determination under § 647(a), there is certainly a triable

24 issue of fact regarding whether defendants had probable cause to

25 believe that plaintiff knew or should have known that Dunsing

26 would be offended or annoyed by any alleged sexual touching.

27      Thus, based upon the foregoing analysis, there are triable

28 issues of fact regarding whether defendant officers had probable

1  cause to arrest Brown.  Therefore, defendants' motion for summary

2  judgment regarding plaintiff's claims against defendants Dunsing

3  and Mendoza based upon unreasonable search and seizure in

4  violation of the Fourth Amendment is DENIED.

5      **2.   Equal Protection**

6      Plaintiff contends that his right to equal protection under

7  the law was violated based upon the fact that defendants targeted

8  of "men who are interested in non-monetary, intimate association

9  with other men" by use of decoys, while the San Joaquin Sheriff's

10  Department never used decoys to target male/female public sex.

11  Plaintiff argues that defendants' specific targeting of male/male

12  public sex constitutes selective prosecution in violation of the

13  Fourteenth Amendment and his arrest was as a result of this

14  alleged intentional invidious discrimination.  Defendants contend

15  that the undercover operation at McHenry Avenue Park was not a

16  violation of equal protection, but was based upon specific

17  complaints about male/male sexual acts occurring in the park.

18      "Selectivity in the enforcement of criminal laws is subject

19  to constitutional constraints."  <u>Wayte v. United States</u>, 470 U.S.

20  598, 608 (1985) (quoting <u>United States v. Batchelder</u>, 442 U.S.

21  114, 125 (1979)).  The enforcement of criminal laws cannot be

22  based upon "an unjustifiable standard such as race, religion, or

23  other arbitrary classification."  <u>Id.</u> (quoting <u>Bordenkircher v.</u>

24  <u>Hayes</u>, 434 U.S. 357, 364 (1978)).  Selective prosecution claims

25  are evaluated according to ordinary equal protection standards;

26  the plaintiff must show that a passive enforcement system "had a

27  discriminatory effect and that it was motivated by a

28  discriminatory purpose."  <u>Id.</u>  An invidious discriminatory

13

purpose is one "that is arbitrary and thus unjustified because it bears no rational relationship to legitimate law enforcement interests." Baluyut v. Superior Court,[3] 12 Cal. 4th 826, 830-31 (1996).  However, "[a] showing of discriminatory intent is not necessary when the equal protection claim is based on an overtly discriminatory classification."  Wayte, 470 U.S. at 608 n.10 (citing Strauder v. West Virginia, 100 U.S. 303 (1880)).

The Central District of California recently addressed this issue under similar factual circumstances in the unpublished opinion of Hope v. City of Long Beach, CV 04-4249 (C.D. Cal. Aug. 16, 2005).  In Hope, the plaintiff class argued that the City of Long Beach and the Long Beach Police Department engaged in impermissible selective prosecution by targeting male/male sexual conduct with decoys, specifically in the Junipero Bathroom.  The court found that the plaintiff class was subject to different treatment under the law if the police target only male/male sexual conduct with decoys without targeting male/female and female/female conduct.  Hope at 13 (citing Baluyut v. Superior Court, 12 Cal. 4th at 830-31).  The court also held that because the Long Beach police department's policy was "designed to ensnare only those individuals interested in engaging in illegal homosexual acts while allowing those interested in engaging in illegal heterosexual acts to proceed unfettered," plaintiff class

_____

[3]    The California Supreme Court's opinion in Baluyut is informative on the standard for establishing selective enforcement in the context of arrests pursuant to § 647(a).  In Baluyut, the court held that defendants arrested for violations of § 647(a) by undercover decoy law enforcement personnel need not show "intent to punish" to establish a defense of discriminatory prosecution.

had created a triable issue of fact the classification is overtly

discriminatory, negating the need to make a showing of

discriminatory intent or motive.  Id. at 14-15 (citing Lawrence

v. Texas, 539 U.S. 558, 565 (2003)).  Finally, the court held

that defendants' argument that the police department was not

targeting a specific class of people, but responding to citizens'

complaints did not render summary judgment appropriate, but

merely created another triable issue of fact regarding

plaintiffs' selective enforcement claims.  Id. at 15.

     In this case, it is undisputed that between 2001 and 2003,

the San Joaquin County Sheriff's Department conducted four to

five undercover decoy operations, focusing upon male/male conduct

in county parks.  (UF ¶ 15).  Plaintiff produces evidence that in

spite of eight incident reports involving male/female lewd

conduct over a two year period, the Sheriff's Department never

conducted a lewd conduct sting operation in the Park targeting

male/female lewd conduct and that no arrests were made as a

result of decoy operations focused upon male/female conduct

during that same two year period.  (Dunsing Decl. ¶ 4; Stipulated

Categorization of Sheriff's Reports Regarding Mot. for Summ. J.

("Reports"), filed June 2, 2006, at 2).[4]  Further, plaintiff

presents evidence that when the Sheriff's Department would

conduct sting operations using female decoys posing as

---

[4]     The police reports indicate that there were nine (9)
lewd conduct reports for male/male conduct as a result of a decoy
operation, but no such reports for male/female or female/female
conduct.  (Reports at 2).  The reports also indicate that there
were two (2) lewd conduct reports for male/male conduct that were
not a result of a decoy operation, eight (8) reports for
male/female conduct that were not a result of a decoy operation,
and no such reports for female/female conduct.  Id.

prostitutes, if an individual tried to solicit sex for free, that individual would be told to take a walk. (Dep. of Larry Mendoza, attached as Ex. C to Nickerson Decl., 41:2-20). The decoy operation would not target lewd conduct in violation of § 647(a). This evidence demonstrates that the use of undercover decoy operations is designed to ensnare only those individuals interested in engaging in illegal homosexual acts. The evidence presented by plaintiff indicates a singling out of this group, and creates a triable issue of fact that the classification is overtly discriminatory. As such, plaintiff does not need to make a showing of discriminatory intent or motive. See Hope at 15.

However, even if plaintiff were required to present evidence of discriminatory purpose by defendants, plaintiff has done so. As set forth above, plaintiff presents evidence that the San Joaquin Sheriff's Department only targets male/male sexual conduct with undercover decoy operations involving § 647(a) and that no arrests were made based upon undercover decoy operations targeting male/female sexual conduct involving § 647(a). Further, the undercover operation in this case was initiated for the specific purpose of targeting male/male conduct that violated § 647(a). As such, plaintiff has pointed to evidence that creates a triable issue that the failure to proceed only against male/male violators and not male/female violators was intentional, and not "simple laxity of enforcement or nonarbitrary selective enforcement." Cf. Oyler v. Boyles, 368 U.S. 448, 456 (1962) (finding no equal protection violation where the allegations set out no more than a failure to prosecute based upon lack of knowledge, not the result of a deliberate policy of

proceeding against only a specific class of persons).   Therefore,
plaintiff has presented sufficient evidence to raise a triable
issue of fact regarding discriminatory intent based upon the
statistical evidence as well as the clearly structured decoy
operation.

Defendants argue that the San Joaquin Sheriff's Department
did not send decoys into McHenry Avenue Park to target a certain
class of people, but rather in response to complaints about
male/male sexual conduct in public areas of the park.   (See
Dunsing Decl. ¶ 4; Mendoza Decl. ¶ 7).   While this presents
evidence of a legitimate law enforcement interest, there remains
a triable issue of fact regarding whether defendants' policy of
only involving decoys to target male/male conduct in violation of
§ 647(a) is invidiously discriminatory and thus,
unconstitutional.

Therefore, defendants' motion for summary judgment relating
to plaintiff's claim for violations of equal protection based
upon selective enforcement of criminal laws is DENIED.

**3.   Qualified Immunity**

Defendants Dunsing and Mendoza argue that they are immune
from suit based upon the doctrine of qualified immunity because a
reasonable peace office in their position would not have believed
they were violating any of plaintiff's rights.   The doctrine of
qualified immunity protects from suit when government officers
who do not knowingly violate the law.   Gasho v. United States, 39
F.3d 1420, 1438 (9th Cir. 1994).   Qualified immunity is a
generous standard designed to protect "all but the plainly
incompetent or those who knowingly violate the law."   Burns v.

1  Reed, 500 U.S. 478, 495 (1991) (citation omitted).  A law officer

2  can establish qualified immunity by demonstrating (1) that the

3  law governing the officer's conduct was not clearly established

4  at the time of the challenged actions, or (2) that under the

5  clearly established law, an officer could reasonably have

6  believed that the alleged conduct was lawful.  See Katz v. United

7  States, 194 F.3d 962, 967 (9th Cir. 1999); Mendoza v. Block, 27

8  F.3d 1357, 1360 (9th Cir. 1994); see also Harlow v. Fitzgerald,

9  457 U.S. 800, 818 (1982) (observing that police officers "are

10  shielded from liability for civil damages insofar as their

11  conduct does not violate clearly established statutory or

12  constitutional rights of which a reasonable person would have

13  known").

14      The question of immunity generally is not one for the jury.

15  Qualified immunity "'is an immunity from suit rather than a mere

16  defense to liability' . . . .  [Therefore,] [i]mmunity ordinarily

17  should be decided by the court long before trial." Hunter v.

18  Bryant, 502 U.S. 224, 228 (1991) (citation omitted).  However, if

19  a genuine issue of material fact exists regarding the

20  circumstances under which the officer acted, then the court

21  should make the determination after the facts have been developed

22  at trial.  Act Up!\Portland v. Bagley, 988 F.2d 868, 873 (9th

23  Cir. 1993).

24      The initial inquiry that the court must make to determine

25  whether an official is entitled to qualified immunity is whether,

26  "[t]aken in the light most favorable to the party asserting the

27  injury, do the facts alleged show the officer's conduct violated

28  a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201

1   (2001) (citing <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991)).

2   Based upon the court's above analysis of defendants' potential

3   liability, the court has found that there are triable issues of

4   fact regarding whether a constitutional violation occurred.

5       If, as in this case, a violation could be made out on a

6   favorable view of the parties' submissions, the next inquiry is

7   whether the constitutional right was clearly established.  <u>Id.</u>

8   This inquiry must be taken in the light of the specific context

9   of the case.  The contours of the right must be sufficiently

10  clear that a reasonable official would understand that what he is

11  doing violates that right.  <u>Id.</u>  However, this does not mean that

12  an official action is protected by qualified immunity unless the

13  very action in question has previously been held unlawful, but,

14  rather, in light of pre-existing law, the unlawfulness must be

15  apparent.  <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002) (internal

16  citations omitted).  The salient question is whether the law at

17  the time of the disputed conduct gave defendants "fair warning

18  that their alleged treatment of plaintiffs was unconstitutional."

19  <u>See id.</u> at 741.  There must exist a clearly established rule so

20  that "it would be clear to a reasonable officer that his conduct

21  was unlawful in the situation he confronted."  <u>Saucier</u>, 533 U.S.

22  at 205-06.

23      The conduct in question surrounds the arrest of plaintiff on

24  October 8, 2003.  At this time, the law regarding the fundamental

25  right to be protected from unlawful arrests was clear.

26  Individuals have a right to be free from unreasonable seizures

27  unless there is probable cause to arrest.  <u>See</u> <u>Caswell</u>, 46 Cal.

28  3d 381; <u>Pryor</u>, 25 Cal. 3d 238.  In this case, because defendants

1   have not provided sufficient evidence that they had probable

2   cause to believe that plaintiff had the necessary intent pursuant

3   to § 647 of the California Penal Code, the officers arrest of

4   plaintiff under § 647 would not be reasonable.  See Saucier, 533

5   U.S. at 205-06.  The California Supreme Court held in Pryor and

6   Caswell that police officers must have probable cause to believe

7   that an individual had the requisite specific illicit intent

8   prior to an arrest.  Caswell, 46 Cal. 3d at 394; see Pryor, 25

9   Cal. 3d at 256-27.  Without the incorporation of such specific

10  intent into the interpretation and enforcement of the statute,

11  the statutory language would be unconstitutionally vague and

12  create the danger that police may execute arbitrary and

13  discriminatory enforcement of the law.  Pryor, 25 Cal. 3d at 252;

14  see Caswell, 46 Cal.3d at 392.  The Caswell court also listed

15  several examples as to what might constitute probable cause to

16  believe that an individual harbors the requisite intent.  Id.

17  395-96.  For example, an officer may personally know that an

18  individual has repeatedly solicited or committed lewd acts at the

19  same location in the past; an officer might have information from

20  a reliable information that an individual has disclosed his

21  intent to attempt to solicit or commit lewd acts in a certain

22  restroom; or the officer may have received complaints from

23  citizens that a certain individual was lingering inside a

24  restroom engaging in suggestive conduct.  Id.  Defendants have

25  not presented sufficient evidence that they were operating under

26  the same type of circumstances as those set forth in Caswell.

27  Thus, if the officers did not have probable cause as to

28

plaintiff's specific intent, a reasonable officer would know that
an arrest would be unconstitutional.

At this time, the law regarding the right to be free from
enforcement of the laws based upon an arbitrary classification
was clear.  <u>Wayte</u>, 470 U.S. at 608.  A reasonable police officer
would know that his conduct was unlawful if the selection of an
individual or a class of persons was based upon an arbitrary
classification.  <u>See</u> <u>id.</u>  Further, the California Supreme Court
has squarely addressed the issue of discriminatory enforcement
against homosexual individuals in the context of § 647.  In
<u>Caswell</u>, the court stated that "the police must apply equal
standards to both homosexuals and heterosexuals" in making
arrests pursuant to § 647.  <u>Caswell</u>, 46 Cal. 3d at 401.  In 1996,
the California Supreme Court revisited the issue of
discriminatory enforcement.  <u>Baluyut v. Superior Court of Santa
Clara County</u>, 12 Cal. 4th 826.  In <u>Baluyut</u>, petitioners sought
dismissal of § 647 charges on the basis that the officers who
arrested them engaged in a pattern of discriminatory arrests and
prosecution of homosexuals under the statute.  14 Cal. 4th at
829.  The evidence presented by petitioners in support of their
motion to dismiss was 10 arrest reports spanning a 2-year period
that demonstrated that the arrests were made pursuant to decoy
operations that "focused solely on persons who had a proclivity
to engage in homosexual conduct."  <u>Id.</u> at 830.  As a result, the
charges against defendants were dropped.  <u>Id.</u> at 829.  The Court
held that 14th Amendment Equal Protection clause principals
applied and that a defendant did not have to show specific intent

21

1  to punish a person singled out as a member of a class in order to

2  prevail.  Id. at 838.

3      In light of the established state of the law at the time in

4  question, defendant officers had "fair warning" that the arrest

5  of plaintiff without probable cause of his intent was

6  unconstitutional.  See Hope, 536 U.S. at 741.  Defendant officers

7  also had "fair warning" that the arbitrary targeting of

8  individuals with a proclivity to engage in homosexual conduct

9  would violate the Equal Protection Clause of the Constitution.

10 Because there are triable issues of fact as to whether the

11 officers had probable cause to arrest plaintiff and whether the

12 officers' decoy operation violated plaintiff's Equal Protection

13 rights, and because defendants had notice that their alleged

14 conduct was unconstitutional, the court cannot find that

15 defendants Dunsing and Mendoza are entitled to qualified immunity

16 at this stage of the litigation.

17          **4.   Policy, Custom, or Practice**

18      Plaintiff asserts that defendant County is liable under §

19 1983 because the County allegedly maintained a policy, custom, or

20 practice that caused the violation of plaintiff's rights.  Under

21 Monell and its progeny, a plaintiff may hold a municipality

22 liable under section 1983 if his injury was inflicted pursuant to

23 city policy, regulation, custom, or usage.  Chew v. Gates, 27

24 F.3d 1432, 1444 (9th Cir. 1994) (citing Monell, 436 U.S. at 690-

25 91, 694).  The existence of a city policy may be established in

26 one of three ways:

27          First, the plaintiff may prove that a city employee
           committed the alleged constitutional violation pursuant
28          to a formal governmental policy or a longstanding

                                22

1    practice or custom which constitutes the standard
2    operating procedure of the local governmental entity.
     Second, the plaintiff may establish that the individual
3    who committed the constitutional tort was an official
     with final policy-making authority and that the
4    challenged action itself thus constituted an act of
     official governmental policy.  Whether a particular
5    official has final policy-making authority is a
     question of state law.  Third, the plaintiff may prove
6    that an official with final policy-making authority
     ratified a subordinate's unconstitutional decision or
7    action and the basis for it.

8    Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (quoting

9    Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992)

10   (citations and internal quotations omitted)).  Assuming that a

11   plaintiff can establish one of these three circumstances, he must

12   then demonstrate that the municipal policy "caused" the

13   constitutional deprivation.  Id.   A municipal policy "causes"

14   injury where it is the "moving force" behind the violation.

15   Chew, 27 F.3d at 1444 (citing Monell, 436 U.S. at 690-91, 694).

16        Plaintiff argues that the County's actions in targeting only

17   male/male conduct with undercover decoy operations was a policy,

18   custom or practice that resulted in his arrest and violated his

19   rights to equal protection under the law.  Defendants argue that

20   the fact that the County engaged in four or five undercover

21   operations targeting male/male lewd conduct over the span of two

22   years is not evidence of some ongoing practice or established

23   policy.  Defendants assert that this is particularly true where

24   the undercover operations in question were done at the request of

25   regional and federal park personnel for a specific criminal

26   problem.

27        The court disagrees.  Plaintiff has presented evidence that

28   only male/male lewd conduct was targeted by the County, despite

                                23

police reports involving heterosexual lewd conduct. (Reports at 2). Plaintiff's evidence shows that there were eight separate incident reports that were not as a result of a decoy operation involving male/female conduct while there were two such incident reports for male/male conduct. Id. Further, defendants' argument that four or five undercover operations within two years is not evidence of a policy, practice, or custom is unavailing. The facts are undisputed that the undercover decoy operations conducted by the San Joaquin Sheriff's Department only specifically targeted male/male conduct. This fact, in conjunction with plaintiff's evidence that violations were not enforced for similar conduct by heterosexual men and that no similar operations were conducted in response to reports of heterosexual lewd conduct, creates a triable issue of fact regarding whether defendant County had a policy, custom, or practice of selectively enforcing criminal laws against an arbitrary class.

Plaintiff also argues that defendant County's failure to train deputies in the elements of lewd conduct resulted in his unlawful arrest. A policy of inadequate police training may serve as the basis for section 1983 liability only where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," and where the identified training deficiencies are "closely related" to the plaintiff's ultimate injury. See City of Canton v. Harris, 489 U.S. 378, 388-91 (1989).

Defendants argue that there is no evidence of a lack of training in the San Joaquin Sheriff's Department as to the legal

24

1  elements of a lewd conduct offense.  Defendants rely upon the

2  declarations of defendants Mendoza, Dunsing, and Semillo

3  pertaining to their knowledge of the elements of a lewd conduct

4  defense.  Plaintiff's sole evidence of lack of training is the

5  deposition testimony of defendants Mendoza and Dunsing.

6  Defendant Dunsing stated that he did not recall any specific

7  portion of the vice investigation training at the police academy

8  that was specifically devoted to lewd conduct.  (Dunsing Dep.

9  11:13-21).  Defendant Mendoza stated that he could not recall any

10 training specific to lewd conduct enforcement. (14:22-15:3).

11 Plaintiff does not provide any expert testimony, training

12 manuals, or individual evidence relating to an absence of

13 training in lewd conduct.  "Proof of a single incident of

14 unconstitutional activity is not sufficient to impose liability

15 under Monell."  City of Oklahoma v. Tuttle, 417 U.S. 808, 823-24

16 (1985); Ramirez v. County of Los Angeles, 397 F. Supp. 2d 1208,

17 1228 (holding that plaintiff failed to create a triable issue of

18 fact to survive summary judgment where the sole piece of evidence

19 was the deposition of a named defendant that he had no training

20 with respect to the violation at issue).  Thus, plaintiff has not

21 presented evidence to create a triable issue of fact in regards

22 to its Monell claim based upon a failure to train.

23     Therefore, based upon the foregoing analysis, defendants'

24 motion for summary judgment regarding plaintiff's claims under

25 Monell based upon a policy, practice, or custom of selective

26 prosecution is DENIED.  Defendants' motion for summary judgement

27 regarding plaintiff's claim under Monell based upon a failure to

28 train is GRANTED.

**B.    State Law Claims**[5]

   **1.    False Arrest**

   Plaintiff also claims that defendants are liable under state law for false arrest.  For the reasons provided in the court's analysis of plaintiff's § 1983 claims against defendants, plaintiff has raised a triable issue of fact that the defendant officers lacked probable cause to arrest him.  Therefore, California Civil Code § 43.55, which provides immunity to officers who detains a suspect based upon probable cause that he committed a crime, is inapplicable.

   Plaintiff asserts that the officers committed the alleged acts within the course and scope of their employment as police officers for the city.  Therefore, the city is vicariously liable.  Cal. Gov. Code § 815.2(a).  Section 815.2(a) provides that a city is liable for acts and omissions of its employees under the doctrine of respondeat superior to the same extent as a

_____

   [5]    In his opposition, plaintiff did not address defendants' motion for summary judgment on his state law claims. At the hearing held April 21, 2006, the court ordered plaintiff to submit supplemental briefing including, inter alia, any opposition to defendants' motion for summary judgment regarding plaintiff's state law claims.  In his supplemental opposition, "[p]laintiff urges this court to exercise its pendency jurisdiction and decide two closely related state claims," plaintiff's claims of false arrest and intentional infliction of emotional distress.  (Pl.'s Supp. Opp'n, filed May 1, 2006, at 8).

   In light of the court's orders and plaintiff's response, the court interprets plaintiff's supplemental briefing as a non-opposition to defendants' motion for summary judgment as to plaintiff's claims for violations of California Civil Code § 52.1.  Therefore, defendants' motion in regards to plaintiff's § 52.1 claim is GRANTED.

private employer.[6]  Under California law, a county's immunity

depends upon whether the officers are immune.  Cal. Gov. Code §

815.2(b).

Defendant officers assert that they are entitled to immunity

pursuant to § 820.2 of the California Government Code, which

provides that public employees are not liable for injuries caused

by a discretionary act.  Cal. Gov't Code § 820.2 (West 2006).

The Ninth Circuit has recognized that this discretionary immunity

"protects 'basic policy decisions,' but does not protect

'operational' or 'ministerial' decisions that merely implement a

basic policy decision."  Martinez v. City of Los Angeles, 141

F.3d 1373, 1379 (9th Cir. 1998) (quoting Johnson v. State of

California, 69 Cal. 2d 782, 796 (1968)).  However, discretionary

act immunity does not protect police officers from liability for

claims of false arrest or imprisonment.  Id.  Specifically, §

820.4 of the California Government Code provides that

> [a] public employee is not liable for his act or
> omission, exercising due care, in the execution or
> enforcement of any law. *Nothing in this section
> exonerates a public employee from liability got false
> arrest or false imprisonment.*

Cal. Gov't Code § 820.4 (West 2006).  Therefore, discretionary

act immunity does not insulate defendant officers from

plaintiff's state law tort claim of false arrest.  See Martinez,

141 F.3d at 1379.  Because defendant officers are not immune from

liability, the County is also not immune from liability.  See

Cal. Gov't Code § 815.2(b).  Accordingly, defendants' motion for

---

[6]      Unlike the rule against municipal liability under
federal law set out Monell, California imposes liability on
municipalities under the doctrine of *respondeat superior*.
Robinson, 278 F.3d at 1016.

1  summary judgment regarding plaintiff's state law claim of false

2  arrest and imprisonment is DENIED.

3  **2.  Intentional Infliction of Emotional Distress**

4  Finally, plaintiff asserts that defendants are liable for

5  intentional infliction of emotional distress.  To succeed on a

6  claim of intentional infliction of emotional distress, plaintiff

7  must demonstrate:

8  (1) extreme and outrageous conduct by the defendant with the
   intention of causing, or reckless disregard of the
9  probability of causing, emotional distress; (2) the
   plaintiff's suffering severe or extreme emotional distress;
10  and (3) actual and proximate causation of the emotional
    distress by the defendants' outrageous conduct.

11

12  Christensen v. Superior Court, 54 Cal. 3d 868, 903 (1991).

13  "Outrageous conduct" requires that the conduct must be so extreme

14  "as to exceed all bounds of that usually tolerated in a civilized

15  community."  Id.  California courts have held that the question

16  of whether the conduct alleged in the complaint is sufficiently

17  "extreme and outrageous" is generally a factual issue for the

18  jury.  See Angie M. v. Superior Court, 37 Cal. App. 4th 1217,

19  1226 (1995).

20  Plaintiff's claim for intentional infliction of emotional

21  distress is derivative of his claims of violations of his civil

22  rights under federal law and false arrest under state law.

23  Because there are triable issues of fact regarding these claims,

24  specifically regarding the existence of probable cause to arrest

25  plaintiff, this claim survives as well.  Further, because this

26  claim is derivative of plaintiff's claim for false arrest,

27  discretionary immunity does not apply to insulate defendant

28  officers.  See Martinez, 141 F.3d at 1381-82.  As such, the

28

County is also not immune from liability for this claim.  See
Cal. Gov't Code § 815.2(b).  Therefore, defendants' motion for
summary judgment regarding plaintiff's state law claim of
intentional infliction of emotional distress is DENIED.

**CONCLUSION**

Based on the foregoing analysis, the court makes the
following orders:

1.   Defendant officers' motion for summary judgment is:

    (a)   DENIED as it applies to plaintiff's § 1983 claims based
upon violations of his Fourth Amendment rights;

    (b)   DENIED as it applies to plaintiff's § 1983 claims based
upon violations of his Fourteenth Amendment rights;

    (c)   DENIED as it applies to plaintiff's false arrest
claims;

    (d)   DENIED as it applies to plaintiff's intentional
infliction of emotional distress claims; and

    (e)   GRANTED as it applies to plaintiff's § 52.1 claims.

2.   Defendant County's motion for summary judgment is:

    (a)   DENIED as it applies to plaintiff's § 1983 claims based
upon policy, practice or custom;

    (b)   GRANTED as it applies to plaintiff's § 1983 claims
based upon failure to train;

    (c)   DENIED as it applies to plaintiff's false arrest
claims;

    (d)   DENIED as it applies to plaintiff's intentional
infliction of emotional distress claims; and

    (e)   GRANTED as it applies to plaintiff's § 52.1 claims.

/////

1        IT IS SO ORDERED.

2   DATED: June 13, 2006

3                                    /s/ Frank C. Damrell Jr.
                                     FRANK C. DAMRELL, Jr.
4                                    UNITED STATES DISTRICT JUDGE

30